ALEX G. TSE (CABN 152348)
Acting United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

MICHELLE J. KANE (CABN 210579)
Assistant United States Attorneys

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    michelle.kane3@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>ALEXANDER ROSENBERG,<br><br>    Defendant. | NO. CR 17-00358 EJD<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>Date: January 22, 2018<br>Time: 1:30 pm<br>Courtroom No. 4 |

## INTRODUCTION

Pursuant to Criminal Local Rule 32-5(b), the United States respectfully submits this memorandum in order to discuss the applicable Sentencing Guidelines ("Guidelines") calculations and to advise the Court of its sentencing recommendation, taking into account the sentencing factors in 18 U.S.C. § 3553(a). The government recommends that, consistent with the Plea Agreement and the Guidelines, the Court impose a sentence of 24 months of imprisonment, three years of supervised release with the conditions agreed to in the plea agreement and any other conditions recommended by the Probation Officer, a fine, restitution, forfeiture, and a $100 special assessment.

U.S. SENTENCING MEMO.

## FACTS OF DEFENDANT'S CRIME AND OFFENSE CONDUCT

In September 2015, an Apple customer alerted the company of a message indicating suspicious activity on her iCloud account. PSR ¶ 6. iCloud allowed users to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device. For example, iCloud stored mail, contact, and calendar information. Customers could also store photos through iCloud Photo Library and My Photo Stream. Customers could store iOS device (e.g., iPhone and iPad) backups and data associated with third-party apps. Customers could store presentations, spreadsheets, and other documents in iCloud Drive, and iCloud Keychain enabled a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices. Users accessed their iCloud accounts with an "Apple ID," which took the form of an email address, and a password. Apple customers who forgot their passwords or otherwise lost access to their accounts could use Apple's password recovery service, known as "iForgot," to regain access by answering challenge questions that dealt with biographical data such as a pet's or childhood friend's name. If the questions were answered correctly, iForgot would allow the password to be reset.

When Apple investigated the customer's complaint, it identified a particular IP address that had accessed or attempted to access hundreds of iCloud accounts. PSR ¶ 6. Apple determined that someone using a computer assigned that IP address had used the iForgot service in connection with the account accesses. *Id.* Apple identified victims including prominent figures in entertainment and business. PSR ¶ 6. Apple expended significant resources – over $200,000 – investigating the unauthorized accesses, identifying accounts at risk, and working with its customers to restore their account access and security. PSR ¶ 12.

The FBI continued with its own investigation and determined that the IP address was assigned to defendant's home. In January 2016, FBI agents executed a search warrant at defendant's home. PSR ¶ 7. Defendant spoke with the agents and denied attempting to access other people's iCloud accounts. PSR ¶ 8. The FBI seized several electronic devices from defendant's home. PSR ¶ 10. Those devices corroborated Apple's records and showed that defendant had successfully accessed iCloud accounts of at least 36 individuals. The FBI found electronic evidence of hundreds more attempts. The electronic

U.S. SENTENCING MEMO. 2

evidence showed that defendant had access to victims' iCloud contact lists as well as other content such as photos and calendars. *Id.*

## PROCEDURAL HISTORY AND GUILTY PLEA

In June 2017, defendant consented to filing of an Information charging him with one count of violating 18 U.S.C. § 1030(a)(2)(C) and (c)(2)(B)(i) (Obtaining Information from a Protected Computer). On August 7, 2017, defendant pleaded guilty pursuant to a written agreement to the single count of the Information. In the agreement, defendant admitted that, between April 30, 2015, and January 7, 2016, he used the iForgot service to access at least 36 accounts belonging to other individuals without authorization. He admitted to using the Internet to research well-known entertainment, business, sports, and political figures to determine their email addresses and to using those email addresses to attempt account access through the iForgot service. Defendant admitted to conducting Internet research to find the answers to the challenge questions. He admitted that once he obtained unauthorized access to the accounts, he reset passwords and then reviewed, downloaded, and took screenshots of personal information from the accounts, including contacts, calendar data, notes, messages, email, and photos. Defendant also admitted to finding credential information stored in the compromised accounts that he used to access other accounts without authorization. Defendant used the information that he obtained through his unauthorized access to further his business interests. Defendant agreed that the offense caused a loss to Apple of more than $6,500, and that the government's position was that the offense caused a loss to Apple of $203,203.

## SENTENCING GUIDELINES CALCULATIONS

The Plea Agreement includes the following Guidelines calculations:
a. Base offense level: U.S.S.G. § 2B1.1(a)(2)     6

b. Specific offense characteristics:

    U.S.S.G. § 2B1.1(b)(1)(F) – Amount of Loss: more than $150,000 (Defendant reserves the right to argue that the loss was more than $6,500 pursuant to U.S.S.G. § 2B1.1(b)(1)(B)).     +10

    U.S.S.G. § 2B1.1(b)(2)(A) – Ten or more victims     +2

|   |   |   |
|---|---|---|
| | U.S.S.G. § 2B1.1(b)(17) – Intent to obtain personal information | +2 |
| c. | Adjusted offense level | 20 |
| d. | Acceptance of responsibility – If I meet the requirements of U.S.S.G. § 3E1.1, I may be entitled to a three-level reduction for acceptance of responsibility, provided that I forthrightly admit my guilt, cooperate with the Court and the Probation Office in any presentence investigation ordered by the Court, and continue to manifest an acceptance of responsibility through and including the time of sentencing. | -3 |
| e. | Total offense level | 17 |

The Probation Officer agrees with the guidelines calculation in the plea agreement. PSR ¶ 30. The government agrees with the conclusion in the PSR that defendant has no criminal history. PSR ¶¶ 34-35. At an adjusted offense level of 17, combined with Criminal History Category I, the Guidelines provide for a sentence of 24 to 30 months in Zone D of the sentencing table, which requires that the minimum term be satisfied by imprisonment. U.S.S.G. § 5C1.1(f).

## STATUTORY SENTENCING FACTORS

After considering the Sentencing Guidelines and factors outlined in 18 U.S.C. § 3553(a), the government believes that a sentence of 24 months, the low end of the applicable Guidelines range, is a reasonable and appropriate sentence.

**A. The Nature and Circumstances of the Offense**

The defendant committed a serious offense by engaging in a months-long campaign of accessing individuals' private iCloud accounts. Only the appearance of the FBI at his door stopped his conduct. As he admits in the PSR, defendant accessed the accounts of celebrities and businesspeople in order to further his own ambitions. He searched the accounts he accessed unlawfully for the private email addresses of other individuals he wanted to contact. He then pretended to have obtained that information legitimately as he contacted his targets seeking support, endorsements, and investment. In addition to the accounts to which he has admitted, the electronic evidence showed that he attempted to access hundreds of other accounts.

U.S. SENTENCING MEMO. 4

Moreover, defendant undoubtedly had access to private information beyond contact lists, including personal photos. By downloading information to his own phone and computer, he put this data at risk. The private content of his celebrity victims' accounts would have been a tempting target for those interested in embarrassing or extorting prominent and wealthy individuals.

The offense also caused serious losses to Apple by requiring the company to expend thousands of hours to investigate the offense and protect its customers.

**B. The History and Characteristics of the Defendant**

Defendant is relatively young and this is his first offense. Defendant's lack of criminal history is, however, already a significant factor in the calculation of the appropriate sentence and should not provide further basis for downward variance. *See United States v. Robinson,* 669 F.3d 767, 777 (6th Cir. 2012)(noting that "[t]he sentencing guidelines already take into consideration [defendant's] lack of significant criminal history); *United States v. Myers,* 439 F.3d 415, 418 (8th Cir. 2006) (finding that a significant downward departure based merely on a lack of criminal history would be unreasonable). Moreover, any discussion of defendant's criminal history should also note that this offense continued for at least eight months until being stopped by law enforcement – it was not a momentary lapse of judgment. The government has similarly accounted for defendant's other history and characteristics in recommending a sentence at the low end of the applicable Guidelines range.

**C. The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense**

"The § 3553(a)(2)(A) consideration is the 'just deserts' concept, which carries the need for retribution, the need to make the punishment fit the crime, and the need not just to punish but to punish justly." *United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010) (rejecting below-guidelines sentence as substantively unreasonable). A sentence of 24 months would reflect the seriousness of the defendant's conduct, promote respect for the law, and provide just punishment for the offense.

**D. The Need for the Sentence to Afford Adequate Deterrence**

18 U.S.C. § 3553(a)(2)(B) requires that a sentencing court evaluate both specific deterrence (to defendant) and general deterrence (to other potential criminals). *See United States v. Musgrave*, 761

U.S. SENTENCING MEMO.                5

F.3d 602 (6th Cir. 2014) (rejecting below-guidelines sentence as substantively unreasonable).[1] A sentence of 24 months would serve as an important deterrent not only to the defendant but also to individuals who are currently involved in illegally accessing computers, or are considering committing such an offense.

With regard to defendant, as noted in the PSR, he may have accepted responsibility and expressed remorse for his conduct, but he has also attempted to minimize the significance of his offense. For example, he provided the Probation Officer articles regarding alleged "hacks" committed as youths by now-famous entrepreneurs such as Twitter's Jack Dorsey or Facebook's Mark Zuckerberg. PSR ¶ 46. The clear implication is that if these "celebrities" engaged in similar conduct, it must be relatively benign. This raises concerns that defendant may not be deterred from future unlawful acts if he does not face significant consequences now.

As to broader deterrence, the Court's evaluation of this sentencing factor should focus on ensuring that others know and consider that federal sentences for computer intrusion will be significant before embarking on similar conduct. *See United States v. Martin,* 455 F.3d 1227 (11th Cir. 2006) (noting that general deterrence is particularly important in white collar crimes and rejecting sentence in part because it failed to provide deterrence); *see also* S. REP. 98-225, 76, 1984 U.S.C.C.A.N. 3182, 3259 ("the second purpose of sentencing is to deter others from committing the offense"). Even amateurs like defendant, who access accounts not through technological prowess, but through exploiting the wealth of online information about famous people, should know that their conduct is criminal and will be punished.

**E. The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct.**

As discussed above, the defendant's lack of criminal history is already reflected in his Guideline sentencing range. Relying on this factor to justify a downward variance would contravene the goal of 18

---

[1] Some courts have concluded that the analysis under 18 U.S.C. § 3553(a)(2)(B) should focus on general deterrence, leaving the specific deterrence analysis for consideration under 18 U.S.C. § 3553(a)(2)(C) ("protect the public from further crimes of the defendant"). *See United States v. Edwards,* 595 F.3d 1004, 1021 (9th Cir. 2010) (Bea, C.J., concurring in part and dissenting in part). Either way, it is clear that this Court should consider general deterrence, in addition to the other sentencing factors, in fashioning an appropriate sentence.

U.S. SENTENCING MEMO.    6

U.S.C. § 3553(a)(6), which is to avoid unwarranted sentencing disparities. *See United States v. Bistline,* 665 F.3d 758, 767 (6th Cir. 2012) (noting that "[t]he sentencing guidelines already take account of [the defendant's] lack of a prior criminal record and specific conduct" and finding that a significant downward variance based on lack of criminal history cannot avoid unwarranted sentencing disparities).

There are no codefendants to compare here, but in a recent case, a defendant who accessed iCloud and other accounts by using a "phishing scheme" to obtain passwords received a sentence of 18 months of imprisonment, with a lower Guidelines offense level. *See United States v. Collins,* Crim. No. 1:16-CR-00121 (Middle District of Pennsylvania, October 27, 2016). At the other end, a defendant who leaked celebrity nude photographs after accessing email accounts through a password-reset scheme similar to defendant's received a sentence of ten years of imprisonment. *See United States v. Chaney*, Crim. No. 11-CR-958 (Central District of California, December 17, 2012). Defendant Rosenberg's conduct and the government's recommended sentence fit reasonably on that sentencing spectrum.

**FINE AND RESTITUTION**

The PSR concludes that defendant has the ability to pay a fine (PSR ¶ 57) and recommends a fine of $5,000. The applicable fine range under Guidelines Section 5E1.2 is $10,000 to $95,000. The government therefore recommends the low-end fine of $10,000.

The Mandatory Victim Restitution Act ("MVRA") states that courts "shall order" those convicted of certain crimes to "make restitution" to their victims. 18 U.S.C. § 3663A(a)(1). The Ninth Circuit has interpreted the MVRA to mean that those convicted of applicable crimes must pay restitution to any victim "directly and proximately harmed as a result of the commission of [the] offense." *United States v. Waknine*, 543 F.3d 546, 555 (9th Cir. 2008) (citing Section 3663A(a)(2)). The MVRA goes on to state that restitution orders "shall require" convicted defendants to pay restitution for offenses "resulting in damage to or loss or destruction of property of the victim," 18 U.S.C. § 3663A(b)(1), and to "reimburse the victim for lost income . . . and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." *Id.* § 3663A(b)(4). Apple has requested, and defendant has agreed to, $203,203 in restitution, which includes the money that the company spent responding to the offense and working with victims and potential

U.S. SENTENCING MEMO. 7

victims to secure their accounts. Both the government and the Probation Office recommend the amount of $203,203 as an appropriate tally of Apple's out-of-pocket losses resulting from the defendant's actions. PSR ¶ 69.

**CONCLUSION**

In full consideration of the defendant's history and characteristics together with the other goals of sentencing, the government respectfully requests that the Court sentence defendant to 24 months of imprisonment followed by three years of supervised release with the conditions agreed to in the plea agreement and any other conditions recommended by the Probation Officer, a fine of $10,000, $203,203 in restitution to Apple, forfeiture as specified in the plea agreement and the Final Order of Forfeiture (ECF No. 19), and the required $100 special assessment.

Dated: January 16, 2018

Respectfully submitted,

ALEX G. TSE
Acting United States Attorney

/s/
MICHELLE J. KANE
Assistant United States Attorney